UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM JERMICHAEL CARTER
and JOSHUA LOPP,

        Plaintiffs,

v.

DANIEL HEYNS, *et al.*,

        Defendants.
                           /

Case No. 1:16-cv-1279

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

        This is a *pro se* civil rights action brought by two state prisoners, William Jermichael Carter (Carter) and Joshua Lopp (Lopp), who are in the custody of the Michigan Department of Corrections (MDOC).  Carter and Lopp seek relief pursuant to 42 U.S.C. § 1983 and Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq*.  This matter is now before the Court on defendants Heyns, Washington, Finco, Hoffner, Burton, Perez and Leach's motion for summary judgment for lack of exhaustion (ECF No. 13).

        **I.**        **Background**

        The complaint, filed by two *pro-se* plaintiffs, involves separate claims.  While the two plaintiffs are currently housed at Lakeland Correctional Facility (LCF), this lawsuit arises from events which occurred at two different correctional facilities and which involved seven MDOC employees.  At the core of this lawsuit is plaintiffs' claim that the MDOC officials refused to recognize their religion of the Nation of Gods and Earths (NOGE) in what plaintiffs refer to as "theological discrimination."  Compl. (ECF No. 1, PageID.3).

By way of background, the MDOC previously designated NOGE as a Security Threat Group (STG) because it was "intolerant and subversive." *Cromer v. Braman*, No. 1:07-CV-009, 2009 WL 806919 at *9 (W.D. Mich. March 25, 2009), *affirmed* No. 09-1532, 2011 WL 5289606 (6th Cir. Nov. 1, 2011). *See, e.g., Marria v. Broaddus*, No. 97CIV.8297(NRB), 2004 WL 1724984 at *2 (S.D.N.Y. July 30, 2004) (after evidentiary hearing, the court denied the prisoner's motion for preliminary injunction seeking to receive "*The Five Percenter*" publication, finding that "[d]efendants have clearly shown that the Five Percenters act as an organized group within the prison system to receive new members, intimidate members of rival groups, and participate in criminal activity, including extortion, robbery, assaults and drug trafficking"). Courts appear reluctant to engage in the rigorous task of classifying NOGE for purposes of First Amendment and RLUIPA claims brought by prisoners. As one court observed, "[i]n dealing with Free Exercise or RLUIPA claims based the denial of the right to practice NOGE, several courts have dodged this complex threshold issue by *assuming without deciding* that NOGE is religious at the pleadings stage, at summary judgment and even at trial." *Vangel v. Aul*, No. CA 15-43L, 2015 WL 5714850 at *6 (D. R.I. June 19, 2015), report and recommendation adopted, No. CA 15-43L, 2015 WL 5714855 (D. R.I. Sept. 29, 2015) (listing cases) (emphasis added). *See, e.g., In re Long Term Administration Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 468 (4th Cir. 1999) ("Although the parties vigorously dispute whether the Five Percenters even constitute a religious group, the district court did not attempt to resolve this question. Rather, the court assumed -- as do we -- that the Five Percenters are a religious group entitled to First Amendment protection. We thus avoid the 'difficult and delicate task' of examining the nature and sincerity of the inmates' professed beliefs.").

Here, plaintiffs acknowledge that the MDOC had designated NOGE as an STG, stating that it was removed from that status on March 9, 2011. This appeared to be in response to a grant of summary judgment in *Hardaway v. Haggerty*, 2:05-cv-70362 (E.D. Mich.) (Order Feb. 25, 2011) in which the court ordered that "[t]he MDOC's designation of the NGE [NOGE] as a STG is in violation of RLUIPA" and that "[t]he STG designation of NGE shall be removed." *See Hardaway v. Haggerty*, No. 05-70362, 2011 WL 761494 at *8 (E.D. Mich. Feb. 25, 2011) (prior to issuing order, the court "ruled that the NGE is a religion entitled to protection under RLUIPA, not a gang").

### A. Carter's claims

Carter has alleged as follows. On or about September 12, 2014, while incarcerated at LCF, Carter requested that Warden Bonita Hoffner allow him to have a "weekly civilization class for sincere adherents of the NOGE in accordance with the NOGE Divine Centered Cultural Tenets." *Id*. at PageID.6. However, Warden Hoffner denied the request on November 21, 2014, referencing a memorandum from "David Leach, Special Activities, MDOC," this despite the fact that "NOGE had been removed as an STG on March 9, 2011, by Deputy Director, Dennis Straub." *Id*. at PageID.4, 6. Plaintiff grieved the decision. *Id*. at PageID.6. According to plaintiff, (now former) MDOC Director Daniel Heyns "had the power and authority to recognize" NOGE as a religion, and by denying plaintiff's grievance "resulted in an affirmation of the discrimination and persecution Plaintiffs [sic] were grieving." *Id*. at PageID.7.

### B. Lopp's claims

Lopp has alleged as follows. On January 1, 2016, while incarcerated at the Richard A Handlon Correctional Facility (MTU), Lopp submitted a written request to be allowed to have NOGE recognized by defendant MTU Warden Dwayne Burton. Compl. at PageID.7. Lopp requested the right to assemble and secure a vendor that could meet the needs of NOGE. *Id*. On February 18, 2016, Lopp spoke to defendant Chaplain Perez who apparently told Lopp that he would "see to the matter personally by speaking to the Warden." *Id*. Chaplain Perez later told Lopp that he would not be allowed to have chapel time and space because NOGE was not recognized by the MDOC. *Id*. Lopp filed a grievance on March 27, 2016. *Id*. After commencing the appeal at MTU, plaintiff was transferred to LCF on May 12, 2016. *Id*. Lopp ultimately appealed the grievance to the MDOC Director's Office. *Id*. Plaintiff alleged that defendant MDOC Director Heidi Washington failed to correct the unconstitutional denials by her subordinates. *Id*.

### C. Plaintiffs' complaint

In Count One, Carter and Lopp alleged that LCF Warden Hoffner and MTU Warden Burton denied their right to practice NOGE in violation of the First Amendment. Compl. at PageID.9. Plaintiffs claim that these actions also violated their rights under the Fourteenth Amendment and RLUIPA. *Id*.

In Count Two, Carter alleged that by not adhering to MDOC Policy Directive 06.03.150, Mr. Leach violated his First and Fourteenth Amendment rights. *Id*.

In Count Three, Carter and Lopp alleged that former MDOC Director Heyns, present MDOC Director Washington, and MDOC Deputy Director Thomas Finco denied them equal protection under the laws and violated their First and Fourteenth Amendment Rights. *Id*. With

4

respect to this count, the Court notes that the complaint contains no allegations against Deputy Director Finco.

In Count Four, Carter and Lopp alleged that defendants' "acts and omissions" denied them due process of law, equal protection of the law, and "the right to be free of discriminatory practices" in "callous disregard of their constitutional rights and RLUIPA protections." *Id*. at PageID.10 (emphasis omitted).

Plaintiffs seek declaratory, injunctive and monetary relief, with the non-monetary relief to include the recognition of NOGE as a religion, exempting them from work on "NOGE honor days" and being "allowed to gather congregationally to show their sincere Love and Honor of God, the wearing and display of the universal flag, crowns with tassels and access to the NOGE national newspaper "The Five Percenter." *Id*. at PageID.12.

## II. Defendants' motion for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.     Failure to Exhaust

#### 1.     Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### C. Discussion

#### 1. Carter's claims

Defendants appear to agree that Carter exhausted Grievance LCF 15-03-0238-27b ("238") through Step III against defendants Heyns, Finco, Leach and Hoffner "alleging that all facets of the MDOC have denied his request to recognize the God Centered Culture, The Nation of Gods and Earths." Defendants' Brief (ECF No. 14, PageID.72). Defendants do not identify any defect in Carter's exhaustion of the claims alleged in the complaint against defendants Heyns, Hoffner, Finco and Leach. *Id*. at PageID.73-74. While defendants point out that the complaint does not allege any facts against defendant Finco, they do not address the issue. *Id*. at PageID.73. In short, defendants do not seek summary judgment with respect to Carter's claims. Nevertheless, for the reasons discussed in § III, *infra*, the Court should sua sponte dismiss Deputy Director Finco because plaintiffs have not alleged any misconduct on his part.

#### 2. Lopp's claims

Lopp's claims are directed at defendants Washington, Burton and Perez. Defendants acknowledge that Lopp filed Grievance MTU 16-03-00302-028k ("302") (incident date of March 26, 2016) and exhausted it through Step III, "grieving the denial of time and chapel space because his God Centered Culture was not a recognized religion in the MDOC." *Id*. However, defendants contend that Lopp did not properly exhaust the claims because he failed to name defendant Washington in the grievance at Step I and his grievance was rejected as duplicative of other grievances, i.e., "Per PD 03.02.130, two or more identical individual grievances filed on a given issue shall be rejected." *See id*. at PageID.73-74; Grievance 302 (ECF No. 14-3, PageID.97). The rejection was upheld on appeal at Steps II and III. *See* Grievance 302 at PageID.94, 96. However,

none of the responses to Grievance 302 listed the other "identical grievances." *Id*. at PageID.94-97. In this regard, and one line of the response to the original grievance is illegible because it was marked out or redacted. *Id*. at PageID.97. Defendants provided no further explanation for the rejection.

It is undisputed that plaintiff Lopp did not name Director Washington in his grievance. For that reason, even if Lopp's grievance had been improperly rejected, he failed to properly exhaust a claim against Director Washington. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, Director Washington is entitled to summary judgment on this basis.

However, plaintiff's response to the motion for summary judgment raises a valid question with respect to Grievance 302. In his response, Lopp contends that the grievance process was effectively unavailable to him in this case because the MDOC determined that he "had already filed his first step grievance on his right to practice his God Centered Cultural tenets" and future grievances would be rejected. Plaintiffs' Response (ECF No. 20, PageID.132). Lopp points out that "[d]efendants suggest that [his] grievance with respect to the rejected newspaper is a duplicate grievance for denial of time and Chapel space," and that this suggestion is misleading because "[t]he two grievances are for different reasons." *Id*. at PageID.134. In essence, Lopp contends that by rejecting Grievance No. 302 as duplicative of another grievance unrelated to the claim raised in Grievance No. 302, the MDOC made exhaustion unavailable with respect to the issues actually raised in Grievance No. 302. *See Ross v. Blake*, -- U.S. --, 136 S. Ct. 1850, 1855 (2016) (under 42 U.S.C. § 1997e(a) "[a] prisoner need not exhaust remedies if they are not 'available'").

9

Defendants have not filed a reply. While they included a copy of a grievance which Lopp filed on January 25, 2016 related to the rejection of mail which occurred on January 22, 2016, they do not address the relevance of this grievance. *See* Grievance No. MTU-16-01-0098-07a ("98") (ECF No. 14-3, PageID.102-103) (grievance involved the rejection of a copy of "The Five Percenter" newspaper depicting a racially-motivated hanging pursuant to Policy Directive 05-03-118, because the newspaper was "mail that may be a threat to the security, good order or discipline of the facility . . . or may interfere with the rehabilitation of the prisoner and mail advocating racial supremacy . . . . or attacking a racial . . . group."). If defendants are relying on Grievance No. 98 as one of the identical grievances which formed the basis of the rejection of Grievance No. 302, they provide no explanation as to how Grievance No. 302 (seeking religious services) is duplicative of Grievance No. 98 (contesting a decision to reject mail). Based on this record, genuine issues of material fact exist with respect to whether plaintiff was prevented from filing his grievance against defendants Burton and Perez. Accordingly, these two defendants are not entitled to summary judgment.

**D.    MDOC Deputy Director Finco**

Plaintiffs' complaint does not allege any particular action taken against them by Deputy Director Finco, let alone any wrongful conduct committed by him. Because plaintiffs' complaint lacks any allegations of wrongdoing by Finco, they have failed "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court can, and should, *sua sponte* dismiss plaintiffs' action against Finco pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which provides in pertinent part that "the court shall dismiss the case at any time if the court determines that . . . (B) the action or appeal . . . (ii) fails to state a claim on which relief may be

granted[.]" *See also* 42 U.S.C. § 1997e(c) ("The court shall on its own motion . . . dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted . . ."); *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir.2010) (the *Iqbal* plausibility standard applies when dismissing a claim under § 1915(e)(2)(B)(ii)). Accordingly, Deputy Director Finco should be dismissed from this action.

### III.   Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (docket no. 13) be **GRANTED** as to defendant Washington and that the motion be **DENIED** in all other respects.

I further recommend that defendant Finco be **DISMISSED** from this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 42 U.S.C. § 1997e(c).

Dated:  July 5, 2017                     /s/ Ray Kent
                                         RAY KENT
                                         United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).