UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM JERMICHAEL CARTER,

        Plaintiff,                                    Case No. 1:16-cv-1279

v.                                                   Hon. ROBERT J. JONKER

DANIEL HEYNS, *et al.*,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

        This is a *pro se* civil rights action brought by William Jermichael Carter, a state prisoner at a Michigan Department of Corrections (MDOC) facility. A co-plaintiff, Joshua Lopp, signed the original complaint, but has since been dismissed. *See* Order (ECF No. 50).[1] In his amended complaint, plaintiff Carter sued defendants pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* (RLUIPA). Four defendants remain: former MDOC Director Daniel Heyns; former MDOC Deputy Director Thomas Finco; former Lakeland Correctional Facility (LCF) Warden Bonita Hoffner; and former Special Activities Coordinator (SAC) David Leach. This matter is now before the Court on defendants' motion for summary judgment (ECF No. 74).

---

[1] Because this lawsuit initially included two plaintiffs, some court papers refer to "plaintiffs".

I.      Background

The claims before the Court are set out in Carter's amended complaint (ECF No. 89).[2]  This dispute commenced on September 12, 2014, when Carter alleged that he "sought to have a weekly Civilization Class for sincere adherents of the NOGE ["Nation of Gods and Earths"] in accordance with the NOGE Divine God Centered Cultural Tenets, from Defendant [Warden] Bonita Hoffner at the Lakeland Correctional Facility [LCF]."  Amend. Compl. at PageID.1086. Defendant Hoffner denied this request on November 21, 2014, referring to an MDOC memorandum from SAC David Leach.  Id.

Carter "submitted his request on this subject matter" to SAC Leach, pointing out that MDOC Policy Directive 05.03.150 ("Religious Beliefs and Practices of Prisoners") supported Carter's "right to live out and practice his Divine God Centered Cultural Tenets free from persecution while in Defendants' custody."  Id.  However, SAC Leach "denied the request submitted by Plaintiff, even though the NOGE had been removed as a security threat group on March 9, 2011, by Deputy Director, Dennis Straub."  Id.

Carter also sent a "grievance to the Director's office seeking resolution."  Id. Carter alleged that Director Daniel Heyns "failed to protect Plaintiff and the NOGE by assuring that MDOC Policy is administered in a fair, balanced and just manner when it came to Plaintiff who is a sincere adherent of NOGE."  Id.  "Instead, he allowed his subordinates to deny the grievance without intervening."  Id. at PageID.1086-1087.  Director Heyns' "actions and refusal

---

[2] The Court allowed plaintiff to file his proposed amended complaint (ECF No. 46-1) on March 20, 2020.  See Order (ECF No. 50).  However, the amended complaint was not formally docketed until 38 other papers were filed.  See Amended Complaint (ECF No. 89).  Despite this delay, the parties have treated the amended complaint (identified as both ECF No. 46-1 and 89) as the operative pleading in the case since March 20, 2020.

to protect Plaintiff allowed the theological discrimination against Plaintiff and the NOGE to continue." Id. at PageID.1087.  According to Carter, Director Heyns' denial of his grievance "resulted in an affirmation of the discrimination and persecution Plaintiff was grieving." Id.

Finally, Carter alleged that from November 12, 2014, to January 22, 2015, Deputy Director Thomas Finco "continued to deny Plaintiff his rights to live out and practice his God Centered Cultural Tenets of the NOGE as is his civil, natural and human rights conferred to him by the Constitution of the United States of America and RLUIPA." Id. at PageID.1087 (emphasis in original).  Carter alleged that Deputy Director Finco "became personally involved in this matter by twice denying the requests directed to him by Plaintiff Carter." Id. at PageID.1087-1088. Carter does not allege the nature of his requests or when Finco denied the requests.

Carter attached an affidavit to his amended complaint which included a timeline:

1. That before filing my grievance on the denial of allowing me [and all other similar [sic] situated Prisoners] the right to practice our Divine Centered Cultural Tenets under the Nation of Gods and Earths, I submitted a request for space and time to Deputy Director Thomas Finco, which was received on November 12, 2014.

2. I received a response from this request, which was sent by way of Special Activities Coordinator, David Leach, on November 26, 2014, indicating that my request had been determined by Deputy Finco as denied because the NOGE was not approved for separate group service or activities.

3. That on January 22, 2015, I again submitted a correspondance [sic] to Deputy Director, Thomas Finco, regarding the December 2014 inquiries directed to David Leach, and I was informed that Deputy Finco had determnined [sic] that the NOGE were not [sci] approved for separate group services or activities.

Carter Aff. (ECF No. 89-4, PageID.1103).

Carter also attached the following documents related to the allegations and timeline. On November 26, 2014, SAC Leach replied to Carter's request to Deputy Director Finco:

3

> This is in regards to your correspondence received in CFA on November 12, 2014. Deputy Director Thomas Finco determined on June 12, 2014, that the Nation of Gods and Earths are not approved for separate group services or activities.

SAC Leach Reply (ECF No. 89-4).

On January 22, 2015, Carter sent the following memorandum to Deputy Director Finco, stating that NOGE is the "equivalent" of a religion:

> This brief correspondence pertains to my request for accommodations for my way of life, which is Nation of Gods and Earths. In December of 2014, in response to some inquiries to Mr. Leach, I was informed that deputy director Thomas Finco determined that the Nations of Gods and Earths are not approved for separate group services or activities.
>
> Based on all of the above, I would ask that the basis and rationale of this determination be made known, as I am unaware as to why I would be denied my right to practice my God Centered Culture (which is the equivalent of anybody else's religion)? Additionally, can you clarify exactly what is meant by "separate" group services or activities? Separate from whom or what?
>
> Your time and attention in this very important matter is supremely appreciated. Peace.

Carter Memo (ECF No. 89-2, PageID.1098).

On or about February 13, 2015, Carter forwarded a copy of this memorandum to SAC Leach. *See* Reply (ECF No. 89-3, PageID.1100). Leach responded as follows:

> Information in our files indicates that this issue has been previously addressed. Therefore, no further action will be taken by this office.

*Id*.

Carter alleged four counts against defendants in their official and individual capacities. *See* Amend. Compl. at PageID.1081-1082. In Count One, Carter alleged that LCF Warden Hoffner violated his 1st Amendment rights, 14th Amendment rights, and RLUIPA by denying Carter "his right to live out and practice the Divine God Centered Culture of the NOGE

4

in her individual facility." *Id*. at PageID.1089.  Carter alleged that Warden Hoffner discriminated against him by allowing religious groups to have "weekly religious practice," but "denying him the same right to love and honor God . . .because Plaintiff's path to God is a non-religious, God Centered Cultural path."  *Id*. at PageID.1089-1090.

In Count Two, Carter alleged that SAC Leach violated his 1st and 14th Amendment rights "by not adhering to the MDOC Policy Directive PD 05.03.150, which requires prison officials to protect Plaintiff's right to love and honor God as an inalienable right[.]" *Id*.

In Count Three, Carter alleged that Director Heyns and Deputy Director Finco denied his 1st Amendment rights and 14th Amendment rights to equal protection under the law "by discriminately applying their policies, customs, and usage of MDOC Policy Directive PD 05.03.150 granting protection to prisoners who love and honor God religiously, while at the same time denying the same protection to Plaintiff who [sic] love and honor God from a Divine God Centered Cultural perspective."  *Id*.

In Count Four, Carter alleged that the actions of all defendants,

> collectively constitutes a denial of fundamental due process of law, Equal Protection of the law, First Amendment Establishment Clause Protection, and the right to be free from the discriminatory practices by the Defendants who only allow God to be loved and honored from a religious perspective and ignoring the rights of Plaintiff who love and honor God from a Divine God Centered Cultural perspective as is his civil, natural and human right.

*Id*. at PageID.1090-1091.  Carter also included a catch-all claim that defendants disregarded "RLUIPA protections."  *Id*. at PageID.1091.

Carter's requested relief includes the following.  First, the Court enter a declaratory ruling that defendants violated Carter's 1st Amendment rights under the establishment clause and the free exercise clause "to love and honor God from his Divine God Centered Cultural

5

perspective free from government intervention." *Id*. at PageID.1093.   Second, the Court award Carter a monetary judgment including but not limited to court costs and actual out of pocket expenses. *Id*.   Third, the Court enjoin defendants from "denying the Plaintiff his inalienable right to love and honor God from the Divine God Centered Cultural perspective of the NOGE." *Id*. Fourth, the Court order defendants to "apply MOOC Policy Directive PD 05.03.150 to protect Plaintiff's right to love and honor God free from discrimination at their hands." *Id*.

> Fifth,
>
> [T]hat any and all punishment or punitive measures [meted] out by Defendants against the Plaintiff for being a sincere adherent of the NOGE be forbidden by the Court and be declared. Plaintiff request equal treatment from the Defendants and the MDOC including but not limited to time and space for Plaintiff's weekly God Civilization and 120 Class, Parliaments, recognition of the NOGE Honor Day Calendar outlining the days Plaintiff and sincere adherents of the NOGE should be excused from work and allowed to gather congregationally to show their sincere love and honor of God, the wearing and display of the Universal Flag, Crowns with tassels and access to the NOGE National Newspaper "The Five Percenter," all be declared.

*Id*.

> Sixth,
>
> Plaintiff request he be permitted to carry his Book of Life with him to Parliaments and classes.   This book contains a little over 120 lessons which contain his Divine God Centered Cultural Tenets or catechism in the written form of questions and answers be declared.   Plaintiff ask that the MDOC recognition of the National Office of Cultural Affairs (NOCA) as the outside representative providing good orderly direction to Plaintiff and sincere adherents be declared. Plaintiff also requests his right to purchase materials necessary to live out and practice his Divine God Centered Culture from NOGE vendors be declared.

*Id*. at PageID.1093-1094.   Seventh, Carter asks that no punitive or retaliatory measures be allowed against him because of the filing of this complaint.   *Id*. at PageID.1094.

## II. Motion for summary judgment

### A. Legal standard for summary judgment

Defendants seek summary judgment on various grounds. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.  Carter's official capacity claims

### 1.  RLUIPA

Carter sued defendants in their official capacities, seeking injunctive relief under RLUIPA.  Defendants contend that Carter's RLUIPA claims should be dismissed as moot "because no injunctive relief may be granted as Defendants are long retired."  Defendants' Brief (ECF No. 75, PageID.529).

RLUIPA provides that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  RLUIPA defines the term "government" to mean:

> (i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law[.]

*Id.* at § 20000cc-5(4)(A).

A RLUIPA claim against an MDOC official in his or her official capacity is considered a claim against the State of Michigan.  *Cardinal v. Metrish*, 564 F.3d 794, 798 (6th Cir. 2009).  Contrary to defendants' contention, the RLUIPA claims for injunctive relief, which are brought against defendants in their official capacities, did not disappear when they retired from their positions at the MDOC.  Fed. R. Civ. P. 25(d)(1) provides that:

> An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the

> parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

"In other words, when defendants sued in their official capacities leave their positions, their successors automatically assume their roles in the litigation." *Horacek v. Heyns*, No. 2:13-cv-280, 2016 WL 11263235 at *3 (Dec. 15, 2016), *R&R adopted*, 2017 WL 1190551 (W.D. Mich. March 31, 2017). *See Kaminski v. Coulter*, 865 F.3d 339, 343 (6th Cir. 2017) (under Fed. R. Civ. P. 25(d), when a public official is succeeded in office, the successor is automatically substituted in for the previous official insofar as the complaint named the previous official in his official capacity; "[a]lthough this extinguished the claims against [the previous official] in his official capacity, he still remained a party to the suit in his individual capacity.").

Applying Fed. R. Civ. P. 25(d)(1) to this case, when defendants Heyns, Finco, Leach and Hoffner retired, their successors – the current MDOC Director, MDOC Deputy Director, SAC, and LCF Warden – were automatically substituted as parties to this action with respect to the official capacity claims. Accordingly, defendants' motion should be denied to the extent it seeks to dismiss the RLUIPA claims as moot due to defendants' retirements.

However, because Carter is no longer housed at LCF, his request for injunctive relief against the LCF Warden is now moot. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (a prisoner's claim for injunctive relief becomes moot when the prisoner is no longer confined at the facility where the claim allegedly arose). For that reason, defendants' motion should be granted as to the RLUIPA claim against defendant LCF Warden Hoffner.[3]

---

[3] To the extent plaintiff seeks monetary damages under RLUIPA against the defendants in their individual capacities, his claim fails. While RLUIPA permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available against states under RLUIPA, *Sossamon v. Texas*, 563 U.S. 277, 293 (2011). Nor are monetary damages available against defendants in their individual capacities. *See Haight v. Thompson*, 763

2. **Section 1983**

Carter also sued defendants under 42 U.S.C. § 1983 for violating his federal civil rights. Section 1983 "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, Carter alleged that defendants, acting in their official and individual capacities, violated his rights under the 1st and 14th Amendments. Defendants contend that they "are immune from *all* official capacity claims." *See* Defendants' Brief (ECF No. 75, PageID.543) (emphasis added). It is well established that "the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities." *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003), citing *Will v. Michigan Department of State Police*, 491 U.S. 58, 66 (1989). However, "[t]he immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law." *Ernst v. Rising*, 427 F.3d 351, 358-59 (6th Cir. 2005), citing *Ex parte Young*, 209 U.S. 123, 155-56 (1908). Here, the exception applies because Carter's § 1983 official capacity claims seek to

---

F.3d 554, 568 (6th Cir. 2014) ("At stake at this point is only whether RLUIPA permits money-damages claims. We agree with the district court that it does not."). This Court recently revisited the *Haight* opinion in *Mease v. Washington*, No. 2:20-cv-176, 2021 WL 1921071 at *16 (W.D. Mich. May 13, 2021), concluding that *Haight* remains controlling authority in this circuit, notwithstanding *Tanzin v. Tanvir*, -- U.S. --, 141 S. Ct. 486 (2020), which allowed individual-capacity lawsuits against government officials under the Religious Freedom Restoration Act (RFRA)).

enjoin defendants from violating his federal constitutional rights. Accordingly, defendants' motion for summary judgment based on 11th Amendment immunity should be granted as to Carter's claims for monetary damages and denied as to his claims for injunctive relief.

### C.     Exhaustion of the RLUIPA claims

The Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 "or any other Federal law" must first exhaust available administrative remedies. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218. Finally, even if a prisoner complies with the grievance procedures, the grievance must give fair notice of the misconduct or mistreatment as measured against the claim alleged in the prisoner's complaint. *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).

Defendants contend that Carter failed to exhaust his RLUIPA claim because Carter failed to submit a request to Deputy Director Finco to have the MDOC recognize NOGE as a religious group and failed to have Finco authorize group religious services at his facility. Defendants' Brief (ECF No. 75, PageID.531-533).   *See* Policy Directive 05.03.150 ¶ K ("A prisoner or group of prisoners belonging to a religious group not recognized by the Department may request Department recognition of that group by submitting a written request to the Warden or designee. . .") and ¶ L ("The Deputy Director shall make the final decision as to whether a religious group will be granted Department recognition and, if so, whether group religious services and activities and personal religious property will be allowed. . .").

This is defendants' second motion for summary judgment based on lack of exhaustion. In their (first) motion for summary judgment filed back in 2017 (ECF No. 13), defendants acknowledged that Carter's claims were exhausted, stating that "Plaintiff prisoner Carter filed Grievance LCF 1503023827B (MDOC Step III Grievance Report, Exhibit 2) through Step III against Defendants Heyns, Finco, Leach and Hoffner alleging that all facets of the MDOC have denied his request to recognize the God Centered Culture, The Nation of Gods and Earths." Defendants' Brief (ECF No. 14, PageID.72). Defendants further stated that, while Carter did not identify any factual allegations as to Deputy Director Finco in his Complaint, "he did file a Step I grievance and pursued the grievance through Step III against Defendants Heyns, Leach, Hoffner and Finco, related to the denial of his request for religious recognition of the God Centered Culture, The Nation of Gods and Earths."   *Id*. at PageID.73.

After reviewing the record, this Court noted that "Defendants do not identify any defect in Carter's exhaustion of the claims alleged in the complaint against defendants Heyns,

12

Hoffner, Finco and Leach." July 5, 2017 R&R (ECF No. 22, PageID.158). Ultimately, the undersigned recommended that defendants' (first) motion for summary judgment be granted as to defendant Washington and be denied in all other respects. *Id*. at PageID.161. After reviewing plaintiffs' objections to the R&R, the Court dismissed defendant Washington and allowed plaintiff to amend the complaint to include a claim against Deputy Director Finco for denying plaintiff time and space to practice his "Divine God Centered Cultural Tenets". *See* Order (ECF No. 30). In a later order, this Court directed that Carter's amended complaint be filed and that an amended case management order be entered for Carter to proceed with his claims against Defendants Heyns, Finco, Hoffner and Leach. *See* Order (ECF No. 50). Based on this record, the exhaustion issue has been resolved. Accordingly, defendants' motion for summary judgment based on Carter's failure to exhaust the RLUIPA claim should be denied.

### D. Carter's 1st Amendment claims

The 1st Amendment provides that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]"

> The first of the two Clauses, commonly called the Establishment Clause, commands a separation of church and state. The second, the Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people. While the two Clauses express complementary values, they often exert conflicting pressures.

*Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). Defendants contend that Carter's claims fail because his lawsuit does not implicate religious rights protected under the 1st Amendment.

### 1. Free Exercise Clause

The Free Exercise Clause of the 1st Amendment to the United States Constitution applies to the States through the 14th Amendment. *Church of the Lukumi Babalu Aye, Inc. v. City*

13

*of Hialeah*, 508 U.S. 520, 531 (1993).  "Only beliefs rooted in religion are protected by the Free Exercise Clause, which, by its terms, gives special protection to the exercise of religion."  *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 713 (1981).

While Carter claims that the MDOC denied him religious accommodations, the alleged violation which gave rise to the lawsuit was not a request for group religious services, but rather a request for a "weekly Civilization Class" at LCF.  Amend. Compl. at PageID.1086. Carter has advised MDOC officials that he has no religion and that NOGE is not a religion but a "God Centered Culture" which is "equivalent" to a religion.   Memo to Finco (Jan. 22, 2015) (ECF No. 89-2, PageID.1098).  For example, Carter refers to "cultural group meetings" and identified NOGE as "a God Centered Cultural Nation" represented by its "National Office of Cultural Affairs".  *See* Carter Letter (May 25, 2011) (ECF No. 75-4, PageID.673).  In his amended complaint, Carter seeks to have the MDOC recognize NOGE's National Office of Cultural Affairs, allow NOGE members to attend Parliaments, exhibit the nation's Universal Flag, and have access to the National Newspaper ("The Five Percenter").  Amend. Compl. at PageID.1093.

Carter addressed his position with a previous LCF Warden.  In his May 25, 2011 letter sent to LCF Warden Howes, Carter requested "Departmental Recognition of the Nation of Gods and Earths (NGE), for the purpose of conducting cultural group meetings and attend [sic] group activities" under Policy Directive 05.03.150.   Carter Letter (May 25, 2011) (ECF No. 75-4, PageID.673).   In this request, Carter explained that NOGE (NGE) is a "culture" as opposed to a "religion":

> The Nation of Gods & Earths is <u>NOT</u> a religion, it is a God Centered cultural Nation. Since God is the centerpiece of our Nation, we love and honor God everyday as a culture, free from but equivalent to any mainstream religion (please see enclosed defining letter). Similarly, the NOGE does not deal in "beliefs" we

14

>deal in actual facts, knowledge and experience. Either one knows or doesn't know. People express "belief" when they lack proof and are unable to demonstrate, or say that they know. Proof requires the presentation of evidence that must be universally acceptable to everyone; Evidence that cannot be argued away. It is because of evidence that we (NOGE) know and experience the existence of God. Belief denotes doubt, and we do not doubt the existence of God, we "know" that God exists. In fact, we teach 1) that the Blackman is God and his proper name is Allah: <u>A</u>rm <u>L</u>eg <u>L</u>eg <u>A</u>rm <u>H</u>ead. We also teach 2) that Black people are the original people of the Planet-Earth 3) that Black people are the Fathers and Mothers of civilization 4) that the science of Supreme Mathematics is the key to understanding man's relationship to the universe 6) that education should be fashioned to enable us to be self sufficient as a people 7) that each one should teach one according to their knowledge 8) that our children are our link to the future and they must be nourished, respected, loved, protected and educated 9) that the unified Black family is the vital building block of the Nation. These central doctrines enumerated above represent the core tenets of our God Centered Culture. I am confident that the foregoing description of our cultural tenets coupled with the NOCA [National Office of Cultural Affairs] package adequately satisfies the required information provision of PD 05.03.130.

Carter Letter (May 25, 2011) (ECF No. 75-4, PageID.673).

At his deposition, Carter testified that he has no religion and that "religious practices" are "not a part of my tenets within my nation":

>Q. Okay. So when you are exercising your religious beliefs are you engaging in some form of prayer or something like it; is that what's happening?
>
>A. Just as a point of information, I don't have a religion. I have a God centered culture. You know, like I was explaining to you earlier that's how we define our culture because God is the centerpiece of our existence in our nation. I don't -- our path to God is cultural and not religious, and so when you speak about these different practices as far as prayer, the religious practices, I can't speak on that because I have no awareness of it because that's not a part of my tenets within my nation.
>
>Q. So it's not a religion is what you're telling me?
>
>A. It's not a religion. It's a God centered culture.

Carter Dep. (ECF No. 75-3, PageID.593).

15

When asked to define the "God" at the center of NOGE, Carter provided the following responses:

Q. So who do you understand God to be then?

A. Well, my teachings is the black man is God.

Q. The black man is God?

A. The black man is God.

Q. Like all black men or one in particular?

A. The black man is God.

Q. Does that mean all black men or one black person?

A. That means that one who has -- a black man that has the proper knowledge of himself is God.

*Id.* at PageID.591.

Carter's testimony and documents establish that he has no religion, that he does not engage in religious practices, and that NOGE is not a religion. Plaintiff's claims do not implicate government interference with religion or religious practices. Accordingly, defendants should be granted summary judgment with respect to Carter's claims under the 1st Amendment's Free Exercise Clause.

### 2. Establishment Clause

Carter's claims against defendants do not implicate the 1st Amendment's Establishment Clause. "[T]he Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith, or tends to do so." *Lee v. Weisman*, 505 U.S. 577, 587 (1992). Carter does not allege that defendants individually or in their positions as MDOC officials

established a religion or coerced him to support or participate in a religion.  The MDOC does not establish a "state religion or religious faith" by recognizing and accommodating religious practices within the prison system.  The Supreme Court "has long recognized that the government may . . . accommodate religious practices . . . without violating the Establishment Clause." *Green v. Tudor*, 685 F. Supp. 2d 678, 695 (W.D. Mich. 2010) (quoting *Cutter*, 544 U.S. at 713-14) (internal quotation marks omitted). *See, e.g., Alexander v. Michigan*, No. 1:13-cv-1372, 2014 WL 2604639 at *7 (W.D. Mich. June 11, 2014) (rejecting the plaintiff's claim that defendant MDOC officials violated the Establishment Clause when they failed to recognize his religion, stating that "[t]here are several different religions that are practiced within the MDOC" and that it was incredulous to suggest that MDOC Officials "coerced Plaintiff into participating in any religious practices or took any action establishing a state religion").  Accordingly, defendants should be granted summary judgment with respect to Carter's claims under the 1st Amendment's Establishment Clause.

### E.     Carter's RLUIPA claims

"Under the First Amendment or under RLUIPA, [a] [p]laintiff must allege that his religious exercise has been substantially burdened."  *Clinton v. Duby*, No. 1:18-cv-1114, 2018 WL 5276252 at *3 (W.D. Mich. Oct. 24, 2018).

> The analysis of [a] [p]laintiff's RLUIPA claim parallels the analysis of his free exercise claim.  In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7).

17

*Id*. As discussed, *supra*, Carter has no religion and does not engage in religious practices. Carter's RLUIPA claim fails because defendants' actions in denying weekly civilization classes do not involve burdening a "religious exercise." Accordingly, defendants should be granted summary judgment as to Carter's claims under RLUIPA.[4]

### F. Carter's 14th Amendment Claim

Finally, Carter alleged that defendants violated his 14th Amendment rights to equal protection under the law, "by discriminately applying their policies, customs, and usage of MDOC PD 05.03.150 granting protection to prisoners who love and honor God religiously, while at the same time denying the same protection to Plaintiff who love [sic] and honor God from a Divine God Centered Cultural perspective." Amend. Compl. at PageID.1090. In short, Carter alleged that he is the victim of "theological discrimination." *Id*. at PageID.1090.

---

[4] In reaching this determination, the undersigned is aware of Carter's reference to *Hardaway v. Haggerty*, No. 05-70362, 2010 WL 1131446 (E.D. Mich. March 22, 2010). *See* Memorandum and Order (ECF No. 80-2). *Hardaway* involved the MDOC's classification of NOGE (NGE) as a security threat group ("STG") and the application of RLUIPA to that group. The *Hardaway* court reached inconsistent conclusions based on the magistrate judge's review of "expert affidavits on the issue of whether NGE is a religion." *Hardaway*, 2010 WL 1131446 at *2. First, the court noted that "the magistrate judge concluded that NGE is in fact a religion" and "found that the wholesale ban on distribution of its materials, including The Five Percenter, imposes a substantial burden on the exercise of plaintiff's religion." *Id*. However, in reviewing the magistrate judge's decision, the court altered the magistrate judge's conclusion that NGE was a religion and re-framed the issue by stating that NGE's "ideology" is "religious in nature":

"Defendants first say that the magistrate judge erred in finding that the NGE is a religion. Defendants essentially present the same arguments considered and rejected by the magistrate judge. No useful purpose would be served by rehashing them here. The magistrate judge recognized that determining whether a belief system is a religion is no easy task. Indeed, "Judges are not oracles of theological verity." *Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025, 1030 (3d Cir.1981). However, the magistrate judge carefully waded through the record and determined that the NGE's ideology is religious in nature and deserving of RLUIPA protection. The Court agrees with the magistrate judge on this point. In so doing, the Court also agrees with the magistrate judge that plaintiff has established that the designation of the NGE as a STG and the total ban on The Five Percenter and NGE literature imposes a substantial burden on plaintiff's religious exercise. Thus, plaintiff has met his burden on the first step in the RLUIPA analysis."

*Id*. at *3. This Court is not bound by either the magistrate judge's opinion that NGE (NOGE) is a religion, or the district judge's opinion that "NGE's ideology is religious in nature." Here, Carter, a member of NOGE, unequivocally stated that "The Nation of Gods & Earths is <u>NOT</u> a religion" and "I don't have a religion."

18

The 14th Amendment provides that no State "shall . . . deny to any person within its jurisdiction the equal protection of the laws." "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sioux City Bridge Co. v. Dakota County, Nebraska*, 260 U.S. 441, 445 (1923) (internal quotation marks omitted). In order to maintain a 14th Amendment Equal Protection claim, plaintiff must prove that he is a member of a protected class and that a state actor purposefully discriminated against him because of his class membership. *See Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000).

Here, Carter contends that defendants discriminated against him because they applied Policy Directive 05.03.1250 to religious groups but not to his group (NOGE). The policy directive does not apply in this case. As discussed, *supra*, Carter has no religion, Carter does not engage in religious practices, and NOGE is not a religion. Carter is not part of a protected class for purposes of applying PD 05.03.150. Accordingly, defendants should be granted summary judgment on Carter's 14th Amendment claim.[5]

---

[5] The Court notes that defendants have included a cursory alternative claim for qualified immunity. *See* Defendants' Brief (ECF No. 75, PageID.541-542). Under this affirmative defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Having determined that defendants did not violate Carter's statutory or constitutional rights, it is unnecessary to address defendants' alternative theory of qualified immunity.

### III.     Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (ECF No. 74) be **GRANTED** and that this case be **TERMINATED**.

Dated:   August 20, 2021                                                                  /s/ Ray Kent
                                                                                                         United States Magistrate Judge


**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).