UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM JERMICHAEL CARTER,

        Plaintiff,

v.

DANIEL HEYNS, *et al.*,

        Defendants.

Case No. 1:16-cv-1279

Hon. Robert J. Jonker

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by plaintiff William Jermichael Carter (Carter), a state prisoner at a Michigan Department of Corrections (MDOC) facility. In his amended complaint, Carter sued defendants pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq*. (RLUIPA). Four defendants remain: former MDOC Director Daniel Heyns; former MDOC Deputy Director Thomas Finco; former Lakeland Correctional Facility (LCF) Warden Bonita Hoffner; and former Special Activities Coordinator (SAC) David Leach.

The undersigned entered a Report and Recommendation ("R&R") (ECF No. 99) which recommended granting defendants' motion for summary judgment (ECF No. 74). Ultimately, the R&R was adopted in part, rejected in part, and remanded for further review. *See* Order (ECF No. 102). On review, the Court concluded that Carter's adherence to NOGE is sufficiently religious to be treated as a religion under federal law. In reaching this determination,

1

the Court observed that Carter states that he is a "sincere adherent of NOGE," stated that he is "serious about living out and practicing his God Centered cultural Tenets," and that the Court sees a trend in the case law to find a NOGE practitioner's beliefs to be " 'sufficiently religious in nature' such as to be entitled to protection." Order at PageID.1174-1175. The Court concluded in relevant part that,

> Plaintiff has demonstrated his sincerely held principles of NOGE trigger protection under the First Amendment, RLUIPA, and Equal Protection claims protecting religious belief and practice even though he eschews the label "religion." The Court therefore REJECTS Sections II.D [First Amendment Claim]; II.E [RLUIPA Claim]; and II.F [Fourteenth Amendment Claim] of the Report and Recommendation.

*Id*. at PageID.1177 (emphasis omitted).

Having rejected portions of the R&R, the Court issued instructions on remand:

> This action is REMANDED to the Magistrate Judge for a Report and Recommendation on whether Defendants are entitled to Summary Judgment based on the remaining elements of those claims, including whether the facts alleged in Plaintiff's Complaint set out an Article III case or controversy. The Magistrate Judge may order additional briefing or schedule a hearing as he deems appropriate.

*Id*. (emphasis omitted).

The undersigned, having reviewed the parties' filings, concludes that neither additional briefing nor a hearing are necessary. The history of this matter was set out in detail in the original R&R. The Court will re-state only those portions of the record which are necessary to address the issues on remand.

2

## I.     Background

The claims before the undersigned are set out in Carter's amended complaint (ECF No. 89) which can be summarized as follows.[1]  On or about September 12, 2014, Carter "sought to have a weekly Civilization Class for sincere adherents of the NOGE ["Nation of Gods and Earths"] in accordance with the NOGE Divine God Centered Cultural Tenets, from Defendant [Warden] Bonita Hoffner at the Lakeland Correctional Facility [LCF]."  Amend. Compl. at PageID.1086.  Defendant Hoffner denied this request on November 21, 2014, referring to an MDOC memorandum from SAC David Leach.  Id.

Carter "submitted his request on this subject matter" to SAC Leach, pointing out that MDOC Policy Directive 05.03.150 ("Religious Beliefs and Practices of Prisoners") supported Carter's "right to live out and practice his Divine God Centered Cultural Tenets free from persecution while in Defendants' custody."  Id.  After SAC Leach denied the request, Carter sent a "grievance to the Director's office seeking resolution."  Id.  Carter alleged that Director Daniel Heyns "failed to protect Plaintiff and the NOGE by assuring that MDOC Policy is administered in a fair, balanced and just manner when it came to Plaintiff who is a sincere adherent of NOGE."  Id.  "Instead, he allowed his subordinates to deny the grievance without intervening."  Id. at PageID.1086-1087.  According to Carter, Director Heyns' denial of his grievance "resulted in an affirmation of the discrimination and persecution Plaintiff was grieving."  Id.

---

[1] The Court allowed plaintiff to file his proposed amended complaint (ECF No. 46-1) on March 20, 2020.  See Order (ECF No. 50).  However, the amended complaint was not formally docketed until 38 other papers were filed.  See Amended Complaint (ECF No. 89).  Despite this delay, the parties have treated the amended complaint (identified as both ECF No. 46-1 and 89) as the operative pleading in the case since March 20, 2020.

3

Carter alleged that from November 12, 2014, to January 22, 2015, Deputy Director Thomas Finco "continued to deny Plaintiff his rights to live out and practice his God Centered Cultural Tenets of the NOGE as is his civil, natural and human rights conferred to him by the Constitution of the United States of America and RLUIPA." *Id*. at PageID.1087 (emphasis in original). While Carter alleged that Finco "became personally involved in this matter by twice denying the requests directed to him by Plaintiff Carter," *id*. at PageID.1087-1088, Carter does not allege the nature of his requests or when Finco denied the requests.

Carter submitted an affidavit which included a timeline. *See* Carter Aff. (ECF No. 89-4, PageID.1103). On November 12, 2014, Carter submitted a request to defendant Finco. On November 26, 2014, Carter received a denial from defendant Leach which stated,

> This is in regards to your correspondence received in CFA on November 12, 2014. Deputy Director Thomas Finco determined on June 12, 2014, that the Nation of Gods and Earths are not approved for separate group services or activities.

SAC Leach Reply (ECF No. 89-4). Then, on January 22, 2015, Carter submitted correspondence advising defendant Finco that NOGE is the equivalent of a religion and should be treated as such:

> This brief correspondence pertains to my request for accommodations for my way of life, which is Nation of Gods and Earths. In December of 2014, in response to some inquiries to Mr. Leach, I was informed that deputy director Thomas Finco determined that the Nations of Gods and Earths are not approved for separate group services or activities.
>
> Based on all of the above, I would ask that the basis and rationale of this determination be made known, as I am unaware as to why I would be denied my right to practice my God Centered Culture (which is the equivalent of anybody else's religion)? Additionally, can you clarify exactly what is meant by "separate" group services or activities? Separate from whom or what?
>
> Your time and attention in this very important matter is supremely appreciated. Peace.

Carter (Jan. 22, 2015) (ECF No. 89-2, PageID.1098).

Carter's amended complaint contains four counts directed against defendants in their official and individual capacities. In Count One, Carter alleged that Warden Hoffner violated his rights under the First Amendment, Fourteenth Amendment, and RLUIPA, by denying "his right to live out and practice" NOGE at LCF, because she allowed religious groups to have weekly religious practice but denied him the right to "love and honor God" in his non-religious, God Centered Cultural Path. Amend. Compl. at PageID.1089-1090.

In Count Two, Carter alleged that SAC Leach violated his First Amendment and Fourteenth Amendment rights by not adhering to MDOC Policy Directive PD 05.03.150 "which requires prison officials to protect Plaintiff's right to love and honor God as an inalienable right[.]" *Id*.

In Count Three, Carter alleged that defendants Heyns and Finco denied his First Amendment and Fourteenth Amendment rights "by discriminately applying their policies, customs, and usage of MDOC Policy Directive PD 05.03.150 granting protection to prisoners who love and honor God religiously, while at the same time denying the same protection to Plaintiff who [sic] love and honor God from a Divine God Centered Cultural perspective." *Id*.

In Count Four, Carter alleged that defendants denied him due process of law, equal protection under the law, and his First Amendment rights, and "the right to be free from the discriminatory practices by the Defendants who only allow God to be loved and honored from a religious perspective and ignoring the rights of Plaintiff who love and honor God from a Divine God Centered Cultural perspective as is his civil, natural and human right." *Id*. at PageID.1090-

5

1091.  Carter also included a conclusory catch-all claim that defendants disregarded his "RLUIPA protections."  *Id*. at PageID.1091.

For his relief, Carter essentially wants this Court to re-write the MDOC Policies with respect to NOGE.  Carter seeks relief including: a declaration that defendants violated his First Amendment rights; an injunction directing defendants that they cannot deny Carter "his inalienable right to love and honor God from the Divine God Centered Cultural perspective of the NOGE"; an order directing defendants to "apply MDOC Policy Directive PD 05.03.150 to protect Plaintiff's right to love and honor God free from discrimination at their hands"; and orders directing the MDOC to provide time and space for a weekly "God Civilization and 120 Class", to allow NOGE Parliaments, to recognize the NOGE Honor Day Calendar allowing Carter and other NOGE adherents to be excused from work and to gather, to allow NOGE members to wear and display the Universal Flag, to allow NOGE members to wear "Crowns with tassels", and to allow NOGE members access to the NOGE National Newspaper; and, to order the MDOC to allow Carter to carry his Book of Life to NOGE Parliaments and classes.  *Id*. at PageID.1093-1094.

## II.     Motion for summary judgment

### A.     Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Article III Standing

In its order of remand, the Court questioned whether this lawsuit presents a controversy under Article III:

> First, based on a review of the operative complaint (ECF No. 89) it is not clear to the Court what precisely Plaintiff contends Defendants did or did not do and how he has been harmed. Based on the somewhat vague assertions, there may not be an Article III case or controversy here. The Supreme Court has recently reinforced the need for concrete injury caused by the defendants and redressable by the Court to support Article III jurisdiction. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). Here, Plaintiff has not identified meetings or other faith practices he's been unable to pursue. His main quarrel seems to be with the way he and Defendants disagree in how to characterize NOGE.

Order (ECF No. 102, PageID.1175-1176).

In *TransUnion LLC*, the Supreme Court stated in part that,

> Article III confines the federal judicial power to the resolution of "Cases" and "Controversies." For there to be a case or controversy under Article III, the plaintiff must have a ' "personal stake' " in the case—in other words, standing. *Raines*, 521 U.S., at 819, 117 S.Ct. 2312. To demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: "'What's it to you?' " Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983).
>
> To answer that question in a way sufficient to establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). If "the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 333 (CA7 2019) (Barrett, J.).

*TransUnion LLC*, 141 S. Ct. at 2203.

At the core of Carter's lawsuit is an alleged violation of the First Amendment. As the Supreme Court stated in *Hudson v. Palmer*, 468 U.S. 517, 523 (1984), "Prisoners must be provided 'reasonable opportunities' to exercise their religious freedom guaranteed under the First Amendment." Carter also contends that defendants violated RLUIPA, a statute which prohibits the government from imposing a "substantial burden" on an inmate's exercise of his religion, except when the government can demonstrate that its policy is the least restrictive means of furthering a compelling governmental interest. *See Holt v. Hobbs*, 574 U.S. 352, 359-61 (2015). Finally, Carter claims that defendants violated the Fourteenth Amendment, which provides that no State "shall . . . deny to any person within its jurisdiction the equal protection of the laws."

As discussed, this lawsuit stems from the somewhat vague allegation that, "[o]n or about September 12, 2014, Carter sought to have a weekly Civilization Class for sincere adherents of the NOGE in accordance with the NOGE Divine God Centered Cultural Tenets, from Defendant

8

Bonita Hoffner at the Lakeland Correctional Facility." Amend. Compl. at PageID.1086. Carter alleged that after Warden Hoffner denied the request, he filed grievances and wrote letters to various MDOC personnel to authorize NOGE group activities at LCF. *Id*. With respect to authorizing religious group activities at correctional facilities, the MDOC has a document listing all recognized religious groups and the items which the members of each recognized group can possess. *See* MDOC PD Attachment 05.03.150A (current version eff. 1/20/22)) (the MDOC's list of "Recognized Religious Groups Authorized to Conduct Group Religious Services/Activities"). There is a procedure to request recognition of a religious group.[2] However, Carter did not allege, and the record does not reflect, that he followed the procedure to obtain recognition of NOGE. Rather, Carter filed this lawsuit.

In his amended complaint, Carter asks the Court to make specific changes to MDOC policy which include: ordering the MDOC to recognize NOGE as a religion on the basis that it is the equivalent of a religion; allowing NOGE members to engage in specific group activities; and, allowing NOGE members to possess specific items. *See* Amend. Compl. at PageID.1093-1094. Applying the standard set out in *Transunion LLC*, the undersigned concludes that Carter lacks standing to sue defendants for the claims alleged in his amended complaint. Specifically, Carter does not allege that he suffered an injury in fact that is "concrete, particularized, and actual or imminent." *See TransUnion LLC*, 141 S. Ct. at 2203. As the Court noted in its order on remand, Carter "has not identified meetings or other faith practices he's been

---

[2] *See* Policy Directive 05.03.150 ¶ K ("A prisoner or group of prisoners belonging to a religious group not recognized by the Department may request Department recognition of that group by submitting a written request to the Warden or designee. . .) and ¶ L ("The Deputy Director shall make the final decision as to whether a religious group will be granted Department recognition and, if so, whether group religious services and activities and personal religious property will be allowed. . .").

unable to pursue" and "[h]is main quarrel seems to be with the way he and Defendants disagree in how to characterize NOGE."  *See* Order at PageID.1175-1176).

Carter's attempt to bypass the religious group recognition procedure in Policy Directive 05.03.150 and to have this Court recognize NOGE as a religious group fails because his amended complaint does not allege an Article III case or controversy.  It is clear that Carter disagrees with the MDOC's characterization of NOGE and believes that NOGE should be recognized as a religious group.  However, Carter's amended complaint fails to allege that *he* suffered a concrete, particularized, and actual or imminent injury due to defendants' failure to recognize NOGE as a religious group, *e.g.*, that defendants disciplined him for adhering to the NOGE Cultural Tenets or that defendants prevented him from participating in a particular meeting or faith practice related to NOGE.  *See TransUnion LLC*, 141 S. Ct. at 2203 ("[u]nder Article III, federal courts do not adjudicate hypothetical or abstract disputes" or "possess a roving commission to publicly opine on every legal question"). For these reasons, Carter lacks standing to bring this lawsuit and defendants should be granted summary judgment.

### III.  Recommendation

Accordingly, I respectfully recommend that defendants' motion for summary judgment (ECF No. 74) be **GRANTED**.

Dated:  September 2, 2022                        /s/ Ray Kent
                                                 RAY KENT
                                                 United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).